IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

JESSE TREVINO,
          Movant,

-vs-                                               Case No. A-15-CA-439-SS
                                               [No. A-13-CR-164(4)-SS]
UNITED STATES OF AMERICA,
          Respondent.

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Movant Jesse Trevino's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [#1022], Respondent United States of America (the Government)'s Response [#1026], and Movant Trevino's Reply [#1027]. Having considered the documents, the file as a whole, and the governing law, the Court enters the following opinion and orders DENYING the § 2255 motion.

### Background

On April 2, 2013, Jesse Trevino was named in a three-count indictment along with twenty-six co-defendants. Count One charged Trevino with Conspiracy to Possess with Intent to Distribute 500 Grams or More of Methamphetamine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). Trevino pleaded guilty to Count One of the indictment pursuant to a plea agreement on August 26, 2013. On December 20, 2013, Trevino was sentenced to a 360-month term of imprisonment, followed by a 5-year term of supervised release, no fine, and a special assessment fee of $100. Trevino subsequently filed a notice of appeal on December 27, 2013. On October 22, 2014, the Fifth Circuit

dismissed Trevino's appeal, finding the record was not sufficiently developed to allow it to make a fair evaluation of his ineffective assistance of counsel claim.

On May 22, 2015, Trevino timely filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Trevino alleges his counsel provided ineffective assistance of counsel by informing him and his niece, Jessica Martinez, that if he accepted the Government's plea agreement and pleaded guilty, the prosecutor would only hold Trevino accountable for the "500 grams or more of methamphetamine" as stated in the indictment and would not expose him to the full amount of drugs involved in the conspiracy, nor for the drugs and guns found at Trevino's home. Relatedly, Trevino claims his counsel promised him he would be sentenced under a base offense level of 34 with a 3-point reduction for acceptance of responsibility and that, according to the Sentencing Guidelines, Trevino's sentence would be between 10 years and 188 months at the most. Trevino claims his lawyer told him the exact sentence between 10 years and 188 months would be determined after the presentence report's calculation of his criminal history points and criminal history category.

The presentence report, for purposes of calculating Trevino's base offense level, determined Trevino was responsible for the following marijuana equivalent:

    13,313.8 grams of methamphetamine actual = 26,276 kilograms of marijuana
    39,459.91 grams of methamphetamine mixture = 79,919.82 kilograms of marijuana
    9,619.4 grams of cocaine = 1,923.88 kilograms of marijuana
    2,326.85 grams of heroin = 2,326.85 grams of marijuana
    1,434.06 grams of "ice" methamphetamine = 26,681.2 kilograms of marijuana
    Total: **138,127.75 kilograms of marijuana**

That marijuana equivalent gave Trevino a base offense level of 38. After applying the various adjustments, Trevino's total offense level was 43. Trevino's 6 criminal history points established

a criminal history category of III. The resulting guideline range was life imprisonment. Trevino's statutory range was life with a mandatory minimum term of 10 years. Ultimately, Trevino received a sentence below his guideline range: 360 months.

Trevino asserts he pleaded guilty solely on the basis of the sentencing promise given to him by his lawyer that ultimately turned out to be incorrect, and, therefore, his guilty plea was not offered knowingly, intelligently, and voluntarily. Further, Trevino contends an evidentiary hearing is required to allow him to present evidence in support of his allegations.

## Analysis

### I.  Legal Standard

Generally, there are four grounds upon which a defendant may move to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255: (1) the imposition of a sentence in violation of the Constitution or the laws of the United States; (2) a lack of jurisdiction of the District Court that imposed the sentence; (3) the imposition of a sentence in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Section 2255 is an extraordinary measure; it cannot be used for errors that are not constitutional or jurisdictional if those errors could have been raised on direct appeal. *United States v. Stumpf*, 900 F.2d 842, 845 (5th Cir. 1990). If the error is not of constitutional or jurisdictional magnitude, the movant must show the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice." *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994). In addition, a defendant who raises a constitutional or jurisdictional issue for the first time on collateral review must show both "cause" for his procedural default, and "actual prejudice" resulting from the error. *Placente*, 81 F.3d at 558.

II.   **Ineffective Assistance of Counsel**

A.   **Legal Standard**

The United States Supreme Court's decision in *Strickland v. Washington* provides the familiar two-pronged test for establishing a claim of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

In the context of sentencing, the movant must demonstrate a reasonable probability that, but for counsel's errors with respect to sentencing matters, he would have received less time in prison. *See United States v. Grammas*, 376 F.3d 433, 438 (5th Cir. 2004).

B.   **Wrongful Inducement of a Guilty Plea**

Trevino argues his lawyer convinced him to plead guilty because, in doing so, he would only be sentenced based on the 500 grams or more of methamphetamine as provided in the indictment, his total offense level would be a 31, and that therefore his sentence would be between 10 years and 188 months at the most. Trevino claims his lawyer made those representations both to him personally and separately to his niece, Martinez, in the lawyer's office. In support of his § 2255 motion, Trevino supplies an affidavit from himself and his plea agreement. *See* Mem. of Law [##1023-1, -2] Ex. 1 (Trevino Aff.), Ex. 2 (Plea Agreement). Trevino contends his motion and affidavit raise issues of fact that require an evidentiary hearing.

To be constitutionally valid, a guilty plea must be knowing and voluntary. *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (citation omitted). A guilty plea may be invalid if induced by defense counsel's unkept promises. *Id.* (citation omitted). On the other hand, "a defendant ordinarily will not be heard to refute her testimony given at a plea hearing while under oath." *Id.* (citation omitted). "'Solemn declarations in open court carry a strong presumption of verity,' forming a 'formidable barrier in any subsequent collateral proceedings.'" *Id.* (quoting *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977)). "Nevertheless, a defendant may seek habeas relief on the basis of alleged promises, though inconsistent with representations she made in open court when entering her guilty plea, by proving (1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise." *Id.* (citation omitted). If the defendant produces independent indicia of the likely merit of her allegations, typically in the form of one or more affidavits from reliable third parties, she is entitled to an evidentiary hearing on the issue. *Id.* (citation omitted). If, however, the defendant's showing is inconsistent with the bulk of her conduct or otherwise fails to meet her burden of proof in the light of other evidence in the record, an evidentiary hearing is unnecessary. *Id.* (citations omitted).

The Fifth Circuit confronted a fact pattern similar to the one before the Court in *Cervantes*. Defendant Cervantes pleaded guilty to distribution of cocaine and entered a plea agreement. *Id.* at 1108. In her petition for habeas corpus relief, she alleged her counsel had rendered ineffective assistance by inducing her to plead guilty based on misrepresentations as to what her sentence would be. *Id.* In support of her motion, Cervantes provided the court with two affidavits from two of her sisters, each stating the affiant heard the lawyer tell Cervantes that if she pleaded guilty and signed

the plea agreement, she would receive no more than five years in prison. *Id.* Cervantes received a sentence of 97 months. *Id.* The district court denied habeas relief without an evidentiary hearing, holding the affidavits from Cervantes's sisters would not be considered because they were received after the government's answer was filed. *Id.* The court further concluded, however, that in the alternative, even if the affidavits were properly admitted, "the facts asserted therein were effectively refuted by the terms of the plea agreement and Cervante's own statements under oath at the sentencing hearing." *Id.*

On appeal, Cervantes argued her lawyer told her she would receive a sentence of 37 months; the plea hearing would be confusing; she should agree to everything the judge said; and he would handle the situation. *Id.* at 1110. Cervantes conceded the statements she made at her sentencing hearing but argued the record was bare with respect to conversations she had with her attorney. Therefore, she contended, the district court should have held an evidentiary hearing. *Id.* The Fifth Circuit did not consider the ultimate merits of Cervantes's wrongful inducement claim but instead whether the district court erred in denying the claim without granting an evidentiary hearing. *Id.* The court discussed the two affidavits of Cervantes's sisters, assumed they were reliable, and observed at least one met the requirement of specificity necessary to warrant an evidentiary hearing because it "adequately described counsel's alleged promises, who was present, as well as when and where the alleged promises were made." *Id.* & n.4. Nevertheless, the court held the district court did not abuse its discretion in refusing to consider the affidavits. *Id.* at 1111.

Turning to the remaining record, the court examined the plea agreement which "state[d] several times, once in bold letters, that no agreements, promises, or representations existed as to what sentence Cervantes would receive." *Id.* The agreement further explained her sentence would be

determined solely by the district court judge. *Id.* The Fifth Circuit noted the district judge reiterated much of what was set forth in the plea agreement at rearraignment and "specifically admonished Cervantes that she could not rely on anyone, even if connected to law enforcement or the government, for promises as to what her sentence would be." *Id.* Cervantes represented to the court she read and understood the entire plea agreement; agreed with its provisions; had consulted with her attorney; had not been induced by any promises, representations, or coercion; and affirmed her understanding she would not be permitted to withdraw the guilty plea even though the sentence she received might be harsher than expected. *Id.*

Here, while Trevino claims his guilty plea was invalid due to his attorney's unkept promises, that contention contradicts his testimony given at the plea hearing while under oath, his plea agreement, and his sworn statements at his sentencing hearing. First, the Magistrate Judge who took Trevino's plea summarized his plea agreement, including the fact that his statutory range was ten years to Life, and Trevino stated he understood the summary and agreed to be bound by the agreement. *See* Resp. [#1026-1] Ex. A (Rearraignment Tr.) at 12:17–14:10, 18:21–20:12, 27:10–28:11. The Magistrate Judge explained that the district judge would determine Trevino's guideline range according to factors like his history and characteristics and the nature and circumstances of the offense to which he was pleading. *Id.* at 35:25–36:5. The Magistrate Judge further described how the guideline range is not binding upon the district judge, and the district judge could sentence Trevino above or below that range. *Id.* at 36:12–19. Of particular relevance, the Magistrate Judge told Trevino that he was aware Trevino's lawyer had reviewed the guidelines with Trevino and that undoubtedly his lawyer had attempted to give Trevino some sense of what his sentence might be, which is "perfectly appropriate" for the attorney to do. *Id.* at 37:15–19. The

Magistrate Judge continued: "But I need to make sure that each of you men understands that your lawyer's best guess or estimate is just that, it's a guess, and it's not binding upon the United States District Judge in determining your sentence." *Id.* at 37:20–23. Trevino confirmed he understood this reality. *Id.* at 37:24–38:1. The Magistrate Judge reiterated "here's the difficult position that each of you men are in before you enter your guilty plea. You simply do not know what your sentence will be." *Id.* at 38:5–7. Trevino confirmed his understanding that while he may have a sense of what his sentence might be given mandatory minimums, he did not know what his sentence would ultimately be. *Id.* at 38:10–17. Finally, Trevino confirmed that nobody promised him a benefit that was not in his plea agreement and that no one promised or guaranteed him what his sentence would be as part of pleading guilty. *Id.* at 42:8–19.

Second, Trevino's plea agreement provided in bold: **"Any prediction or estimate of the probable sentencing range or ultimate sentence that may be imposed, whether from the government, his attorney, or the Probation Office, is not a promise, is not binding, and is not an inducement for the Defendant's guilty plea or waivers."** Plea Agreement [#411] at 7–8. The Plea Agreement repeatedly indicates Trevino is pleading guilty voluntarily and not on account of any promises or inducements. *Id.* at 11–12.

Third, at sentencing, Trevino stated he had reviewed the presentence investigation report with his lawyer. *See* Resp. [#1026-2] Ex. B (Sentencing Tr.) at 45:16–19. The Court considered two objections from defense counsel to the presentence investigation report regarding (1) whether Trevino was a leader–organizer, and (2) the amount of drugs ascribed to Trevino. The Court overruled both objections. *Id.* at 45:20–47:15. Before receiving his sentence, Trevino was given two

opportunities to say anything he wished, and he declined both invitations. *See id.* at 47:16–20, 48:19–20.

Accordingly, Trevino's claim that his lawyer made unkept promises contradicts the record, and Trevino fails to show his attorney's performance was deficient. Because Trevino's claim of unkept promises contradicts the record, Trevino, in order to get an evidentiary hearing, must prove (1) the exact terms of the promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness. Even assuming Trevino satisfied the first two elements through his own affidavit, Trevino does not identify an eyewitness to the promise. Instead, he describes the same promise being made to his niece, Martinez, at the lawyer's office. In other words, Trevino alleges the lawyer promised him personally while the two met at the jail and that he promised Martinez the same thing in separate meetings at the lawyer's office. Martinez was not a third party eyewitness to the lawyer's promise made to Trevino at the jail, nor was Trevino a third party eyewitness to the lawyer's promise made to Martinez at the law office. Even if Trevino had alleged Martinez was an eyewitness to his lawyer's promise to him, Trevino fails to provide an affidavit from Martinez swearing to those events. Instead, Trevino represents he is "awaiting" a sworn affidavit from Martinez, "which will be incorporated in his § 2255 motion." Reply [#1027] at 8 n.1. The Court has yet to receive an affidavit from Martinez.

As such, since Trevino has failed to produce an affidavit from a reliable third party—the typical form of independent indicium of the likely merit of a petitioner's allegations—Trevino is not entitled to an evidentiary hearing. *See Cervantes*, 132 F.3d at 1110. Moreover, Trevino's evidence, which consists solely of his own affidavit, is inconsistent with the bulk of his own conduct, and he

fails to meet his burden of proof in light the other evidence in the record. *See id.* Therefore, an evidentiary hearing is unnecessary.

### Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2255 Proceedings, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejects a movant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the denial of Trevino's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve

encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Therefore, a certificate of appealability shall not be issued.

## Conclusion

Accordingly,

IT IS ORDERED that Movant Jesse Trevino's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [#1022] is DENIED;

IT IS FINALLY ORDERED that a certificate of appealability is DENIED.

SIGNED this the 31st day of July 2015.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE